UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MARGUERITE L. HANIGAN, | ) | Case No. SACV 06-780-JTL |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| JO ANNE B. BARNHART, Commissioner of Social Security, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**PROCEEDINGS**

On August 21, 2006, Marguerite Hanigan ("plaintiff") filed a Complaint seeking review of the Commissioner's denial of her application for social security disability insurance benefits. On October 11, 2006, the parties filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum. Thereafter, on March 13, 2007, defendant filed an Answer to Complaint. On May 18, 2007, the parties filed their Joint Stipulation.

The matter is now ready for decision.

///

///

**BACKGROUND**

On August 5, 2003, plaintiff filed an application for disability insurance benefits. (Administrative Record ["AR"] at 66-68, 333-335). In her application, plaintiff claimed that, beginning on May 1, 2003, limitations regarding movement in her joint, back, and hip prevented her from working. (AR at 75). In a March 23, 2004 letter, the plaintiff claimed the additional impairment of depression. (AR at 132). The Commissioner denied plaintiff's application for benefits both initially and on review. (AR at 49-52, 55-59). Thereafter, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR at 60).

On June 22, 2005, the ALJ conducted a hearing in Orange, California. (AR at 12-26). Plaintiff appeared at the hearing with counsel and testified. (AR at 15). Stephen Berry, a vocational expert, also testified. (Id.). Joseph Jensen, a board-certified orthopedic surgeon, testified as well. (Id.).

On or about November 18, 2005, the ALJ issued her decision denying benefits. (AR at 12-26). In her decision, the ALJ concluded that plaintiff suffered from severe physical impairments of degenerative joint disease of the cervical and lumbar spine, degenerative disc disease of the lumbar spine, and osteoporosis, but that she did not suffer from any severe mental impairment. (AR at 18, 25). According to the ALJ, however, the severe impairments did not meet or equal any of the criteria contained in the Commissioner's Listing of Impairments, 20 C.F.R. Section 404, Subpart P, Appendix 1. (AR at 25). The ALJ also found that, based upon her residual functional capacity, plaintiff retained the capacity to perform her past relevant work as a clerk typist, receptionist and credit clerk

as generally performed in the national economy. (AR at 25). Ultimately, the ALJ found that plaintiff was not disabled pursuant to the Social Security Act. (Id.).

On December 21, 2005, plaintiff filed a timely request with the Appeals Council for review of the ALJ's decision. (AR at 10). On June 29, 2006, the Appeals Council affirmed the ALJ's decision. (AR at 4-7).

**PLAINTIFF'S CONTENTIONS**

Plaintiff makes the following claims in the parties' Joint Stipulation:

1. The ALJ failed to properly assess the severity of plaintiff's mental impairment.

2. The ALJ improperly rejected the residual physical function opinions of the treating physicians.

**STANDARD OF REVIEW**

The Court reviews the ALJ's decision under 42 U.S.C. § 405(g) to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Desrosiers v. Secretary of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401. This Court must review the record as a whole and

3

consider adverse as well as supporting evidence. <u>Green v. Heckler</u>, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the ALJ's decision must be upheld. <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1452 (9th Cir. 1984).

**DISCUSSION**

**A.    The Sequential Evaluation**

The Commissioner has established a five-step sequential process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920 (1991); <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42 (1987). At step one, disability benefits are denied if the Commissioner determines that the claimant is engaged in substantial gainful activity. <u>Bowen</u>, 482 U.S. at 140. At step two, the Commissioner evaluates whether the claimant has a medically severe impairment which significantly limits her physical or mental ability to do basic work activities. <u>Id.</u> at 140-41. Step three requires a consideration of whether the claimant's impairment is equivalent to one of a number of listed impairments that are so severe as to preclude substantial gainful activity. <u>Id.</u> at 141. If the impediment meets or equals one of the listed impairments, the claimant is presumptively disabled. <u>Id.</u> If the impairment is not one that is conclusively presumed to be disabling, step four of the evaluation determines whether the impairment prevents the claimant from performing work she has performed in the past. <u>Id.</u> If the claimant cannot perform her past work, the fifth and final step determines whether she is able to perform other work in the national economy in light of her age, education and work experience. <u>Id.</u> at 142. The
///

claimant is entitled to disability benefits only if she is not able to perform such work. <u>Bowen</u>, 482 U.S. at 142.

**B.   <u>Plaintiff's Mental Impairments</u>**

Plaintiff claims that the ALJ erred in finding that plaintiff's mental impairments did not constitute a severe impairment. According to plaintiff, the ALJ failed to consider the evidence in the record with regard to the severity of her limitations, particularly the assessments of plaintiff's treating and examining physicians. (Joint Stipulation at 13-15).

"An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical ability to do basic work activities." 20 C.F.R. § 404.1521(a). Basic work activities include the "abilities and aptitudes necessary to do most jobs," such as "understanding, carrying out, and remembering simple instructions" and "responding appropriately to supervision, co-workers and usual work conditions." 20 C.F.R. § 404.1521(b)(3)-(4); <u>see also</u> <u>Smolen v. Chater</u>, 80 F.3d 1273, 1290 (9th Cir. 1996); <u>Yuckert v. Bowen</u>, 841 F.2d 303, 306 (9th Cir. 1988). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" <u>Smolen</u>, 80 F.3d at 1290 (<u>quoting</u> <u>Yuckert</u>, 841 F.2d at 306). The severity inquiry at step two is a <u>de</u> <u>minimus</u> screening device, intended to allow the Commissioner to dispose of groundless claims. <u>Bowen</u>, 482 U.S. at 153; <u>Smolen</u>, 80 F.3d at 1290.

Here, the ALJ found that plaintiff's mental impairments did not constitute a severe impairment. Specifically, the ALJ noted that plaintiff's mental impairments resulted in "a mild restriction of the

activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and have resulted in no episodes of decompensation." (AR at 18). The ALJ also stated that plaintiff's treating internist, Victor Siew, M.D., did not diagnose plaintiff with depression. (AR at 17). In fact, Dr. Siew diagnosed plaintiff with major depression and anxiety disorder. (AR at 264, 266). Dr. Siew also found that plaintiff was incapable of even a "low stress" work environment and explained, as a basis for his conclusion, that "she is currently being treated for depression, anxiety disorder, and insomnia." (AR at 270). The ALJ, however, did not acknowledge or discuss Dr. Siew's findings regarding plaintiff's depression. Dr. Siew also prescribed medications for plaintiff such as Diazepam[1] and Lexapro[2] to treat her mental impairments. (AR at 243, 268).

James Benoit, M.D., another treating physician, also diagnosed plaintiff with depression and prescribed various medications for her.[3]

---

[1] Diazepam "is used to treat anxiety, acute alcohol withdrawal, and seizures." http://my.webmd.com/medical_information/drug_and_herb/default.htm (search "Find A Drug, By Name" for "Diazepam"; follow "Diazepam Oral" hyperlink; then follow "Uses").

[2] Lexapro "is used to treat depression and generalized anxiety disorder (GAD)." http://my.webmd.com/medical_information/drug_and_herb/default.htm (search "Find A Drug, By Name" for "Lexapro"; follow "Lexapro Oral" hyperlink; then follow "Uses").

[3] Although Dr. Benoit's progress notes reveal that Dr. Benoit prescribed refills of plaintiff's current medications at the time, which include Paroxetine HCI, it is not clear which specific medications Dr. Benoit prescribed for plaintiff. (AR at 234, 320, 326, 332). Paroxetine HCI is a "selective serotonin reuptake inhibitor (SSRI) used to treat depression, panic attacks, obsessive-compulsive disorder (OCD), anxiety disorders, post-traumatic stress disorder, and a severe form of premenstrual
(continued...)

6

(AR at 234, 235, 236, 243, 258, 260, 261, 296, 318, 320, 326, 332). Dr. Benoit found evidence of a dysphoric and depressed mood on mental status examination. (AR at 234, 250). Dr. Benoit also found that plaintiff's symptoms, including pain and fatigue, "constantly" interfered with her ability to maintain attention and concentration and, moreover, plaintiff's depression contributed to the severity of plaintiff's symptoms and functional limitations. (AR at 261).

A board certified psychiatrist, Noel Lustig, M.D., Ph.D., evaluated plaintiff as well. On May 20, 2005, Dr. Lustig completed a Comprehensive Psychiatric Evaluation Report based on his examination of plaintiff. (AR at 305-317). In the report, Dr. Lustig diagnosed plaintiff with major depressive disorder and pain disorder. Dr. Lustig found that plaintiff's depression significantly handicapped her. (AR at 317).

On May 23, 2005, Dr. Lustig completed a Psychiatric/Psychological Impairment Questionnaire on the basis of his examination and his review of plaintiff's medical records. (AR at 297-304). In addition to diagnosing plaintiff with major depression, Dr. Lustig assessed plaintiff with a current Global Assessment of Functioning ("GAF") score of 60.[4] (AR at 297). Dr. Lustig found that plaintiff was

---

[3](...continued) syndrome (premenstrual dysphoric disorder)." http://my.webmd.com/medical_information/drug_and_herb/default.htm (search "Find A Drug, By Name" for "Paroxetine HCl Oral"; follow "Paroxetine HCl" hyperlink; then follow "Uses").

[4] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." Vargas v. Lambert, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998).
    A GAF score between 51 to 60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional
(continued...)

7

"markedly limited" in her ability to understand, remember, and carry out detailed instructions, to maintain attention and concentration for extended periods, to perform activities within a schedule, to maintain regular attendance, to sustain ordinary routine, to make simple work-related decisions, to complete a normal workday or workweek, and to travel to unfamiliar places or use public transportation. (AR at 299-302, 315-316). Dr. Lustig added that plaintiff would be incapable of even a "low stress" work environment. (AR at 303). Ultimately, Dr. Lustig concluded that plaintiff was totally disabled. (AR at 304).

A treating family practitioner, Tim Schmidt, M.D., found that plaintiff was completely disabled and, among other things, experienced severe depression that would require medication and mental health support. (AR at 237, 246). Dr. Schmidt also opined that plaintiff would require counseling and antidepressant medications. (AR at 237).

A consultative neurologist, Anthony Ciabarra, M.D., Ph.D., also evaluated plaintiff. Dr. Ciabarra found that "anxiety and depression may be exacerbating her symptoms." Dr. Ciabarra recommended that plaintiff continue taking Lexapro. (AR at 252).

At trial, plaintiff testified that anything requiring concentration or memory caused problems at work and in her daily life. (AR 361). Plaintiff also testified that she tried to work at a computer for an hour or two on several occasions and was unable to continue. (AR at 358).

---

[4](...continued)
panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." Diagnostic and Statistical Manual of Mental Disorders 34 (4th. ed, rev. 2000).

Despite the evidence in the record, however, the ALJ found plaintiff's mental impairment was not severe. (AR at 18). In so concluding, the ALJ rejected the opinions of both Dr. Benoit and Dr. Lustig. The ALJ rejected Dr. Benoit's opinion because the ALJ found that his opinion lacked objective medical findings. (AR at 17). The ALJ also rejected Dr. Lustig's opinion because: (1) Dr. Lustig's opinion lacked objective medical evidence to support his conclusion; (2) Dr. Lustig's opinion contradicted his own clinical findings as well as the record as a whole; and (3) Dr. Lustig only examined plaintiff as part of plaintiff's effort to generate evidence for her appeal and, thus, his opinion was less credible. (AR at 17). As discussed below, the ALJ's bases for rejecting Dr. Benoit's and Dr. Lustig's opinions lack merit.

**1.    Lack of Objective Medical Findings**

The ALJ gave limited weight to Dr. Benoit's and Dr. Lustig's opinions based upon the alleged lack of objective findings in support of their conclusions. (Id.). The ALJ further stated that while Dr. Benoit assessed plaintiff with depression and reported an abnormal mental status examination, aside from referring to a dysphoric and depressed mood, he did not report any supporting findings. (Id.). With respect to Dr. Lustig, the ALJ also found that Dr. Lustig's opinion lacked factual foundation and was conclusory. (Id.). The ALJ noted that the majority of Dr. Lustig's findings were based on the subjective reports of plaintiff and her daughter. (Id.).

The Ninth Circuit permits an ALJ to rely on an absence of objective findings to reject a treating physician's opinion. Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (inadequate clinical findings provide specific and legitimate basis for ALJ to reject

9

treating physician's opinion); Buckhart v. Bowen, 856 F.2d 1335, 1339 (9th Cir. 1988) (proper to disregard uncontroverted treating physician's opinion when he fails to provide objective descriptions of medical findings); cf. Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988) (improper to reject treating physician's opinion where he provided at least some objective observations and laboratory and x-ray testing in addition to subjective opinions).

Nevertheless, an ALJ may not reject a treating physician's opinion for lacking supporting clinical data or explanation without first re-contacting the physician to determine whether such supporting clinical data exists. In particular, 20 C.F.R. 404.1512(e)(1), in pertinent part, states:

> We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, <u>the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques</u>.

20 C.F.R. 404.1512(e)(1) (emphasis added). Thus, unless an ALJ complies with his duty to re-contact the treating physician, an ALJ cannot validly cite a lack of clinical data or explanation to reject the treating physician's opinion. See Cleveland v. Apfel, 99 F. Supp. 2d 374, 380 (S.D.N.Y. 2000) (remanding case to ALJ for failure to re-

contact treating physician before rejecting opinion and stating, "When the opinion submitted by a treating physician is not adequately supported by clinical findings, the ALJ must attempt, sua sponte, to develop the record further by contacting the treating physician to determine whether the required information is available"); see also Corey v. Barnhart, 2002 WL 663130, at *5 (S.D. Ind. March 14, 2002) ("The ALJ discredited Dr. Ciulla's opinion because of the lack of objective findings, and there is no indication in the record that the ALJ recontacted Dr. Ciulla to find out whether he had any findings or other information to support his opinion. The ALJ's failure to do so was error.").

Here, the ALJ erred in citing a lack of objective findings as a basis to reject Dr. Benoit's and Dr. Lustig's opinions. First, the ALJ rejected Dr. Benoit's and Dr. Lustig's opinions without first re-contacting them to determine whether, in fact, clinical data existed to support their opinions.

Second, the medical findings in the record arguably support Dr. Benoit's and Dr. Lustig's assessments. For instance, Dr. Schmidt found that plaintiff suffered from severe depression that required prescribed medications and mental health counseling. (AR at 237). Dr. Ciabarra not only found that "anxiety and depression may be exacerbating her symptoms" but also recommended that plaintiff continue taking Lexapro. (AR at 252). Most significantly, the fact that all three physicians who treated or examined plaintiff uniformly agreed that plaintiff suffered from mental impairments that more than minimally affected her ability to work is sufficient to meet the de minimus standard that must be applied to the Step Two severity inquiry. See Bowen, 482 U.S. at 153; Smolen, 80 F.3d at 1290.

**2. Inconsistency**

The ALJ also found that Dr. Lustig's opinions were inconsistent with his own clinical findings and with the record as a whole. The ALJ specifically stated that Dr. Lustig's opinions were "contradicted by his own findings that the plaintiff's attention span, memory, and judgment are only slightly impaired." (AR at 17). The ALJ noted that the marked limitations imposed by Dr. Lustig were inconsistent with plaintiff's capacity, namely her ability to get along with family or friends, talk with relatives on the phone every night, watch television, complete a variety of questionnaires and word process a six-page letter. (AR at 17, 18).

Here, the ALJ erred in citing the most benign portions of Dr. Lustig's findings by ignoring Dr. Lustig's other more significant findings. Dr. Lustig found plaintiff to be "markedly limited" in the ability to understand, remember, and carry out detailed instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule; to maintain regular attendance; to sustain ordinary routine; to make simple work-related decisions; to complete a normal workday or workweek; and to travel to unfamiliar places or use public transportation. (AR at 299-302, 315-316).

Moreover, the Court is not persuaded that plaintiff's ability to perform certain daily activities and complete several questionnaires for her claim renders her mental impairment non-severe. Plaintiff's ability to get along with others, talk on the phone, watch television, and complete questionnaires does not necessarily contradict the assessments that she may be restricted in terms of work-related activities. Notwithstanding this, the fact that plaintiff was diagnosed with depression and prescribed multiple medications for her

12

mental impairments is sufficient to meet the de minimus standard that must be applied to the Step Two severity inquiry. See Bowen, 482 U.S. at 153; Smolen, 80 F.3d at 1290.

### 3. Purpose for Which Dr. Lustig's Opinions Was Created

In her decision, the ALJ gave less than substantial weight to Dr. Lustig's opinions. Although the ALJ acknowledged that Dr. Lustig's opinions constituted legitimate evidence and deserved due recognition, the ALJ stated that the "context in which [they were] produced cannot be entirely ignored." (AR at 17). Specifically, the ALJ was referring to the fact that Dr. Lustig's examination was through an attorney referral and the purpose of the examination was in connection with plaintiff's effort to generate evidence for plaintiff's appeal. (Id.).

But "in the absence of other evidence to undermine the credibility of a medical report, the purpose for which the report was obtained does not provide a legitimate basis for rejecting it." Reddick v. Chater, 157 F.3d 715, 726 (9th Cir. 1998); see also Lester v. Chater, 81 F.3d 821, 832 (9th Cir. 1995) (purpose for which medical report is obtained is not legitimate basis for rejecting it as report procured by claimant is entitled to no less weight than report procured by Commissioner: "The Secretary may not assume that doctors routinely lie in order to help their patients collect disability benefits") (quotation omitted); cf. Saelee v. Chater, 94 F.3d 520, 522-23 (9th Cir. 1996) (rejecting treating physician's opinion that was created at request of claimant because doctor's opinion letter varied from his treatment notes and "was worded ambiguously in an apparent attempt to assist [the claimant] in obtaining social security benefits"). Although an ALJ may consider the purpose for which an

13

opinion was solicited, he cannot rely solely upon the purpose behind the opinion to reject the opinion. Reddick, 157 F.3d at 726 ("Evidence of the circumstances under which the report was obtained and its consistency with other records, reports, or findings could, however, form a legitimate basis for evaluating the reliability of the report.").

Here, the ALJ erred in citing the purpose for which Dr. Lustig rendered his opinion in rejecting that opinion. Unlike Saelee, nothing in the record suggests that Dr. Lustig ambiguously worded his opinion to assist plaintiff. Nor does the ALJ cite any instance or evidence indicating as much. Accordingly, Dr. Lustig's purpose in creating the opinion did not constitute a legitimate basis for the ALJ to reject his opinion.

**C.   Reversal and Remand is Appropriate**

The choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the Court. McAlister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Remand is appropriate where additional proceedings would remedy defects in the ALJ's decision, and where the record should be developed more fully. Id.; see also Rodriguez v. Bowen, 876 F.2d 759, 763 (9th Cir. 1989); Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990). An award of benefits is appropriate where no useful purpose would be served by further administrative proceedings, see Gamble v. Chater, 68 F.3d 319, 322-23 (9th Cir. 1995), where the record has been fully developed, see Schneider v. Commissioner of the Social Security Administration, 223 F.3d 968, 976 (9th Cir. 2000); Ramirez v. Shalala, 8 F.3d 1449, 1455 (9th Cir.

1993), or where remand would unnecessarily delay the receipt of benefits.  See Smolen, 80 F.3d at 1292.

In this case, the Court finds remand appropriate.  On remand, the ALJ must determine whether the severe impairments meet or equal a listed impairment.  At the step two inquiry, the ALJ must consider the combined effect of all of plaintiff's impairments on plaintiff's ability to function, without regard to whether each alone was sufficiently severe.  The ALJ must then determine whether the impairment prevents plaintiff from performing work she has performed in the past.  If plaintiff cannot perform her past work, the ALJ must finally determine whether she is able to perform other work in the national economy in light of her age, education, and work experience.[5]

**ORDER**

The Court, therefore, VACATES the decision of the Commissioner of Social Security Administration and REMANDS this action for further administrative proceedings consistent with this Memorandum Opinion and Order.

DATED: July 18, 2007

/s/
JENNIFER T. LUM
UNITED STATES MAGISTRATE JUDGE

---

[5] In the Joint Stipulation, plaintiff also argues that the ALJ improperly rejected the residual physical function opinions of the treating physicians.  As explained above, however, the ALJ's failure to find that plaintiff suffers from a severe mental impairment constitutes sufficient reason to remand this case.  Depending on the outcome of the proceedings on remand, the ALJ will have an opportunity to address plaintiff's other arguments.  In any event, the ALJ should consider all the issues raised by plaintiff in the Joint Stipulation when determining the merits of plaintiff's case on remand.

15